**UNITED STATE DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY GEISLER,<br><br>Plaintiff,<br><br>v.<br><br>WELLPATH LLC, CORRECT CARE SOLUTIONS d/b/a WELL PATH LLC, H.I.G. CAPITAL MANAGEMENT, LLC, WELLPATH LIQUIDATING TRUST,<br><br>Defendants. | Civil Action No.: 1:26-cv-14785-BEM |

**DEFENDANT H.I.G. CAPITAL MANAGEMENT, LLC'S MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND ORDER [ECF NO. 50] DENYING-IN-PART ITS MOTION TO DISMISS**

Defendant H.I.G. Capital Management, LLC ("H.I.G. Management") respectfully moves for reconsideration of the October 21, 2026 Memorandum Opinion and Order [ECF No. 50; "Transfer Order"] of the United States District Court for the Southern District of Texas ("Transferor Court"),[1] insofar as it denied H.I.G. Management's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Motion to Dismiss"; ECF No. 37).

This Court has the inherent power to reconsider orders entered by the Transferor Court, and it should exercise that power here. The Transfer Order's conclusion that Plaintiff has standing to sue H.I.G. Management rests on clear errors of law and apprehension that should be reconsidered to avoid manifest injustice. Correcting these errors confirms that the claim against H.I.G. Management should be dismissed under Rule 12(b)(1).

---

[1] Unless otherwise noted, citations to "ECF No." refer to the docket of this action as transferred from the Southern District of Texas, *Geisler v. Wellpath LLC*, No. 4:25-cv-03335. Citations to "Bankr. ECF No." refer to the docket of *In re Wellpath SF Holdco, LLC*, No. 24-90566 (ARP) (Bankr. S.D. Tex.).

## INTRODUCTION

Plaintiff attempts to assert one cause of action against H.I.G. Management, Count III, which expressly seeks to hold H.I.G. Management derivatively liable for the conduct of its alleged subsidiary, Wellpath LLC. Verified Complaint ("Complaint") ¶ 35 (ECF No. 1). Wellpath entered Chapter 11 bankruptcy in November 2024, and Plaintiff's derivative claim against H.I.G. Management became property of the Wellpath Estate at that time. The Wellpath Estate later settled all such derivative claims with H.I.G. Management and its affiliates. The Bankruptcy Court presiding over the Wellpath Bankruptcy approved that settlement in a final order releasing the derivative claim Plaintiff attempts to assert here. The Bankruptcy Court then ruled that Ms. Geisler's claim against H.I.G. Management in this action—then pending in the Southern District of Texas—was conclusively barred as a result of the settlement.

No one can dispute these facts: the Bankruptcy Court has entered multiple final orders enforcing the approved settlement and confirming that derivative claims such as Plaintiff's were property of the Wellpath Estate and have been conclusively released. Indeed, in the final order against Plaintiff ("Geisler Enforcement Order"; Bankr. ECF No. 1057), the Bankruptcy Court (1) confirmed the claim asserted against H.I.G. Management in ***this action*** was property of the Wellpath Estate and is released and (2) specifically enjoined Plaintiff from further pursuing the claim against H.I.G. Management in this very action. *See* Notice of Filing Bankruptcy Court Order Enforcing Plan Confirmation and Releases and Enjoining Further Prosecution of Claims Against H.I.G. Capital Management, LLC, Ex. A (ECF No. 25).

Despite that injunction, Plaintiff continues to pursue her derivative claim against H.I.G. Management in this action. As a result, in the Motion to Dismiss, H.I.G. Management sought dismissal of the claim against it under Rule 12(b)(1) because Plaintiff lacks standing to assert

against H.I.G. Management a derivative claim that (1) she does not own, (2) no longer exists, and (3) she is specifically enjoined from pursuing. In denying dismissal, the Transfer Order committed two clear errors of law and apprehension that this Court should reconsider:

*First*, in allowing Plaintiff to pursue Count III, which alleges H.I.G. Management "is liable to Plaintiff for the negligence of Defendant Wellpath's employees," Compl. ¶ 35, the Transfer Order conflated a claim for insurance proceeds against an insurer and the underlying, threshold liability claim asserted against the insured. Plaintiff needs a valid claim of liability against H.I.G. Management ***before*** she can pursue any payment from its insurers. Count III attempts to assert such a threshold liability claim against H.I.G. Management, but Plaintiff plainly lacks standing to assert it. The Transfer Order considered ***only*** Plaintiff's standing to assert a subsequent insurance-proceeds claim; it failed to consider Plaintiff's standing to assert the threshold liability claim actually asserted here. That failure was a clear error of law and apprehension that should be reconsidered.

*Second*, in holding that the Bankruptcy Court's injunction did not defeat Plaintiff's standing, the Transfer Order misapprehended the scope and effect of the Geisler Enforcement Order. Transfer Order at 6–7. Indeed, the Transfer Order rests on an interpretation of the automatic discharge injunction that 11 U.S.C. § 524 confers on a debtor. But Section 524 is irrelevant here: the Geisler Enforcement Order—a final order of the Bankruptcy Court that is now preclusive against Plaintiff—specifically enjoins her from prosecuting the exact claim asserted in ***this action***. The Transfer Order committed a clear error of law and apprehension by analyzing the effect of an irrelevant statute rather than the specific injunction entered against Plaintiff.

Because the Transfer Order is interlocutory, and because it rests on manifest errors of law and apprehension, this Court should reconsider it. Correcting for either error confirms Plaintiff's

claim against H.I.G. Management should be dismissed for lack of standing. Accordingly, H.I.G. Management respectfully requests the Court grant this Motion, reconsider the Transfer Order's partial denial of the Motion to Dismiss, and dismiss the claims asserted against H.I.G. Management under Rule 12(b)(1).

## BACKGROUND

### A. The Wellpath Estate Released Derivative Claims Against H.I.G. Management

Wellpath LLC and its affiliates ("Wellpath") filed for chapter 11 protection on November 11, 2024. Transfer Order at 2. H.I.G. Management is not a debtor. On May 1, 2025, the Bankruptcy Court for the Southern District of Texas entered (i) an order approving the estate's settlement with H.I.G. Capital, LLC and its affiliates under Bankruptcy Rule 9019 (the "Settlement Order") and (ii) an order confirming Wellpath's plan of reorganization (the "Confirmation Order," and together, the "Release Orders"). Geisler Enforcement Order ¶ B. In exchange for a $3,000,000 cash payment and additional value of as much as $22,050,000, the estate released H.I.G. Capital and its affiliates from all claims other than certain carved-out directors' and officers' liability claims. Bankr. ECF No. 956 at 2. The Release Orders expressly encompass "any derivative claims, asserted or assertable on behalf of the Debtors," that seek to "pierce the Debtors' corporate veil and hold H.I.G. Parties liable for conduct by the Debtors." Geisler Enforcement Order ¶ B. H.I.G. Management is among the released "H.I.G. Parties." *Id.* at 3 n.6.

### B. Plaintiff Asserts a Released, Derivative Claim Against H.I.G. Management

Plaintiff, a Wellpath employee, alleges that on August 4, 2022, "a serious breach of security by employees of the Defendant Wellpath LLC" allowed an inmate to escape from the Massachusetts Addiction and Substance Abuse Center ("MASAC") in Plymouth, Massachusetts, and enter her car. Compl. ¶¶ 13–15. Every operative act is attributed to Wellpath. *Id.* ¶ 32. The Complaint alleges no conduct by H.I.G. Management at all; apart from its corporate status and

alleged ownership of Wellpath, H.I.G. Management appears only in Count III, which pleads that H.I.G. Management "is liable to Plaintiff ***for the negligence of Defendant Wellpath's employees*** at the MASAC facility." *Id.* ¶¶ 5–6, 35 (emphasis added). The corresponding prayer seeks "[a] declaration of liability against Defendant H.I.G. Capital Management LLC ***for the negligence of the Defendant Wellpath LLC's employees***," with damages "to be paid by Defendant H.I.G. Capital Management LLC's liability insurer or insurers." *Id.* at 7–8 (emphasis added).

**C. The Bankruptcy Court Enjoins Plaintiff's Claim Against H.I.G. Management**

On October 10, 2025, H.I.G. Management moved the Bankruptcy Court to enforce the Release Orders against Plaintiff by enjoining the derivative claims asserts against H.I.G. Management in this action. Bankr. ECF No. 795. Plaintiff received notice and filed no response. Geisler Enforcement Order at 2 & n.5. On December 8, 2025, the Bankruptcy Court entered final findings of fact, conclusions of law, and an order (defined above as the "Geisler Enforcement Order") holding: (1) the Complaint "attempts to assert against H.I.G. Management only indirect, derivative claims to pierce Wellpath's corporate veil"; (2) such claims "became property of Wellpath's bankruptcy estate upon the commencement of the Wellpath Bankruptcy"; and (3) those claims "have been conclusively released in the Release Orders." *Id.* ¶¶ C–G; *id.* at 5 ¶ 2. The Geisler Enforcement Order "ENJOINED" Plaintiff "from further pursuing the claims asserted against H.I.G. in the Geisler Action." *Id.* at 5 ¶¶ 3–5. The Geisler Enforcement Order incorporates the Bankruptcy Court's November 12, 2025 Memorandum Opinion, which further explains that derivative claims to pierce Wellpath's corporate veil became property of the bankruptcy estate and has been conclusively released. Bankr. ECF No. 956. Plaintiff did not appeal.

**D. The Transferor Court Denies the Motion to Dismiss Based on a Purported Right to Insurance Proceeds and Misapprehension of the Relevant Injunction**

In the Motion to Dismiss, H.I.G. Management moved to dismiss the claim asserted against it under Rules 12(b)(1) and 12(b)(6), arguing (1) Plaintiff lacks standing to assert a claim that belonged to the estate (and was since released), and (2) the Enforcement Order independently bars the claim under res judicata, collateral estoppel, and the release. Motion to Dismiss ¶¶ 19–29. Plaintiff's four-page opposition did not dispute that her claim is derivative or that it belonged to the estate. *See* ECF No. 38. She argued only that a bankruptcy discharge does not bar a suit against a debtor to reach its liability insurance. *Id.* at 1–3. H.I.G. Management replied that it "does not rely on § 524's discharge injunction" and, no matter Plaintiff's intent to pursue liability insurance, she does not own the liability claim against H.I.G. Management upon which that pursuit must rest. ECF No. 42 at 6–8.[2]

The Transfer Order denied the Rule 12(b)(1) motion. It reasoned that Plaintiff's claims "are not the property of the estate, as they are claims for liability insurance," because "the estate has no cognizable interest in the proceeds of the policy." Transfer Order at 4, 6. It then held that the "Bankruptcy Court's injunction" did not defeat Plaintiff's standing because "discharge and injunction are expressly designed to protect only the debtor," and creditors may sue "a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer." *Id.* at 6 (quoting *Mata v. Schoch*, 337 B.R. 138, 143 (S.D. Tex. 2005)). The Transferor Court then transferred the case to this Court under 28 U.S.C. § 157(b)(5) and reserved the Rule 12(b)(6) arguments for this Court. *Id.* at 4 n.1, 9.

[2] The Transfer Order cites H.I.G.'s reply as "Dkt. 40." ECF No. 50 at 2, 4. The reply appears on the transferor docket as ECF No. 42.

The Transfer Order did not distinguish Plaintiff's ultimate pursuit of insurance proceeds from the underlying threshold claim of liability actually asserted here. Transfer Order at 5–6. Specifically, the Transfer Order did not consider that Plaintiff lacks standing to assert her liability claim against H.I.G. Management—the claim actually asserted in the Complaint—and thus has no basis to hold H.I.G. Management even "nominally liable" for her injuries. *Id.* Moreover, the Transfer Order analyzes Plaintiff's standing in light of Section 524's statutory bankruptcy injunction in favor of a debtor—not the specific injunction issued by the Bankruptcy Court in the Geisler Enforcement Order. *Id.* at 6–7. Both failures constitute clear error of law and apprehension.

Plaintiff's ability to pursue liability insurance rests on a viable liability claim against the insured. No matter Plaintiff's ability to pursue proceeds from Wellpath's insurers, she does not own an underlying liability claim against H.I.G. Management. As such, she cannot assert a claim against H.I.G. Management ***or*** its insurers. Indeed, the Bankruptcy Court specifically enjoined Plaintiff from pursuing her derivative claims against H.I.G. Management ***in this action*** because such pursuit infringes upon the Release Orders. The Transfer Order's failure to consider Plaintiff's standing to assert the underlying liability claim or the Geisler Enforcement Order should be reconsidered and the claims against H.I.G. Management should be dismissed under Rule 12(b)(1).

**LEGAL STANDARD**

This Court retains "inherent power" to reconsider and amend any interlocutory order, such as the Transfer Order, "at any time" before entry of final judgment. *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008); *Pure Distribs., Inc. v. Baker*, 285 F.3d 150, 156 (1st Cir. 2002) (citing Fed. R. Civ. P. 54(b)); *Mazza v. City of Boston*, 780 F. Supp. 3d 325, 330 (D. Mass. 2025). This power extends also to orders issued by the Transferor Court in this case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior

decisions of its own or of a coordinate court in any circumstance ….”); *Ins. Co. of N. Am. v. Int'l Ins. Co.*, 1995 WL 599104, at *3 (D. Mass. Sept. 7, 1995) (transferee courts give greater deference to transferor court's "'transfer decisions than to decisions of substantive law'" (quoting *Christianson*, 486 U.S. at 817)). H.I.G. Management does not seek reconsideration of the transfer, only of the corresponding substantive conclusion that Plaintiff has standing to assert a released and enjoined claim against H.I.G. Management.

Reconsideration is warranted where the movant demonstrates "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order." *Davis v. Lehane*, 89 F. Supp. 2d 142, 147 (D. Mass. 2000). Although reconsideration is an "extraordinary remedy" used "sparingly," *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006), it is appropriate where, as here, the prior ruling misapprehended the governing law or the record. *See, e.g.*, *Pike v. Clinton Fishpacking, Inc.*, 143 F. Supp. 2d 162, 164 (D. Mass. 2001) (granting reconsideration of dismissal upon finding error in jurisdictional analysis); *In re Nexium (Esomeprazole) Antitrust Litig.*, 42 F. Supp. 3d 231, 284 (D. Mass. 2014) (granting reconsideration of summary judgment entered on an error "not of reasoning but of apprehension"); *Massachusetts v. New England Pellet, LLC*, 409 B.R. 255, 257 (D. Mass. 2009) (reconsidering transfer order that rested on an improper legal basis and remanding).

**ARGUMENT**

As the Bankruptcy Court has already conclusively held, Plaintiff lacks standing to assert the derivative claims she attempts to assert against H.I.G. Management in this action, which requires dismissal of those claims. "The party invoking federal jurisdiction bears the burden of establishing" subject matter jurisdiction, including the plaintiff's standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Where a plaintiff facially lacks standing to assert a claim

against a Defendant, that claim must be dismissed under Rule 12(b)(1). *Zherka v. Davey*, 827 F. Supp. 3d 229, 238 (D. Mass. 2026) ("A defendant may also seek dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, which includes a claim that a plaintiff lacks standing to bring its claims."); *see also Murthy v. Missouri*, 603 U.S. 43, 45 (2024) ("Because standing is not dispensed in gross, plaintiffs must demonstrate standing for each claim they press against each defendant.") (internal quotation omitted).

Plaintiff's only liability claim against H.I.G. Management is facially derivative, and Plaintiff lacks standing to assert it. Plaintiff does not allege any conduct by H.I.G. Management; instead, she alleges—erroneously—Wellpath is a "wholly owned subsidiary[y] of [H.I.G. Management]," which therefore "is liable to Plaintiff for the negligence of Defendant Wellpath's employees." Compl. ¶¶ 5, 35. Even if H.I.G Management was Wellpath's parent, a parent's liability for its subsidiary's conduct is, by definition, "indirect liability under piercing doctrine, not direct liability." *United States v. Bestfoods*, 524 U.S. 51, 68 (1998); *see Scott v. NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1128–31 (Mass. 2008) (applying *Bestfoods*). Such veil-piercing claims are "general" claims that "inure[] to the benefit of all creditors" and thus become property of the estate upon the petition date. *In re Emoral Inc.*, 740 F.3d 875, 879–81 (3d Cir. 2014); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1152–53 (5th Cir. 1987). Once a claim belongs to the estate, the trustee or debtor-in-possession has "exclusive standing to assert" it, *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994); *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)—and the estate is free to settle it.

The Wellpath Estate did exactly that: it released the derivative veil-piercing claims in exchange for millions of dollars that now flow to *all* Wellpath's creditors, including Plaintiff. Bankr. ECF No. 956 at 2. As the Bankruptcy Court conclusively determined in the Geisler

Enforcement Order—a final order directed at and ***fully binding*** on Plaintiff—Count III's liability claim against H.I.G. Management became property of the Wellpath Estate upon the filing of the bankruptcy petitions and was conclusively released in the Release Orders. *See generally* Geisler Enforcement Order. Plaintiff thus lacks standing to assert her only claim against H.I.G. Management; it must be dismissed under Rule 12(b)(1).

In holding otherwise, the Transfer Order rests exclusively on authorities addressing a single inapposite scenario: a creditor suing a discharged ***debtor*** to fix liability and then collect from the debtor's insurer. Transfer Order at 5–6 (citing *In re Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) (plaintiff permitted to "establish [the discharged debtor's] nominal liability in order to collect from his insurance policy"); *Tech. Lending Partners, LLC v. San Patricio Cnty. Cmty. Action Agency*, No. CV C-07-237, 2010 WL 11579814, at *4 (S.D. Tex. Sept. 2, 2010) (plaintiffs owned state causes of action and could assert them against debtor for purposes of collecting insurance proceeds); *Mata v. Schoch*, 337 B.R. 138, 143 (S.D. Tex. 2005) (creditors permitted to assert claim against reorganized debtor "nominally" as contemplated in the debtor's "Plan of Reorganization"); *BPX Prod. Co. v. Certain Underwriters at Lloyd's London*, No. 23-20034, 2025 WL 2952911, at *8 (5th Cir. Oct. 20, 2025) (discussing *Edgeworth*)).

None of these decisions are relevant to the derivative claim against H.I.G. Management, which is not a debtor and does not argue any claims against it were discharged. H.I.G. Management argued the derivative claim in Count III—the ***liability*** claim underlying any pursuit of insurance proceeds against H.I.G. Management's insurers—became property of the Wellpath Estate and has been conclusively released—***not discharged***. Motion to Dismiss ¶¶ 22–23. The Bankruptcy Court already found as much and expressly enjoined Plaintiff from pursuing her claims against H.I.G. Management in this action. Geisler Enforcement Order at 5. Plaintiff does not own the claim upon

which H.I.G. Management's "nominal liability" purportedly rests, the true owner of that claim has conclusively released it, and the Bankruptcy Court has barred Plaintiff from further prosecuting it. As such, Plaintiff lacks standing to assert the claim against H.I.G. Management in this action, and it should be dismissed.

The Transfer Order's contrary conclusion rests on two clear "errors of apprehension" that should be reconsidered:

*First*, the Transfer Order conflated a claim for insurance proceeds from a liability insurer with an underlying liability claim against the insured—a necessary prerequisite to an insurance-proceeds claim. Transfer Order at 5–6. Count III seeks to establish H.I.G. Management's underlying liability to Plaintiff, but Plaintiff lacks standing to assert that underlying claim. And because Plaintiff cannot demonstrate H.I.G. Management's "nominal liability" to her, she has no basis to pursue insurance proceeds from its liability insurers. *See Cubberley v. Commerce Ins. Co.*, 495 Mass. 289, 294, 249 N.E.3d 1129 (2025) (without a "valid final judgment on the merits" against an insured, injured third parties lack standing to sue insurer). The failure to consider Plaintiff's standing to assert the underlying liability claim against H.I.G. Management is a clear error of apprehension and should be reconsidered.

*Second*, the Transfer Order conflated a standard discharge injunction under 11 U.S.C. § 524 with the Bankruptcy Court's specific injunction in the Geisler Enforcement Order. Transfer Order at 6. The Geisler Enforcement Order is ***not*** a Section 524 discharge injunction: it is a specific final order to enforce the Release Orders, it expressly benefits H.I.G. Management, and it conclusively precludes Plaintiff from litigating her claims against H.I.G. Management in this action. *See generally* Geisler Enforcement Order. The Geisler Enforcement Order plainly encompasses "an action nominally directed against" H.I.G. Management—it encompasses the

claim as pled. *Id.* at 5. The treatment of the Geisler Enforcement Order as a standard Section 524 discharge injunction is an independent clear error of apprehension that should be reconsidered.

Correcting for either of these two independent errors confirms the claims against H.I.G. Management must be dismissed under Rule 12(b)(1). No matter Plaintiff's ability to pursue insurance proceeds from the remaining Defendants' insurers, she does not own a valid predicate claim of liability against H.I.G. Management. The only purported ***liability*** claim against H.I.G. Management became property of the Wellpath Estate upon the filing of the petitions, and it was conclusively released thereafter. Moreover, the Bankruptcy Court has expressly enjoined Plaintiff from further litigating that released claim precisely because she does not own it and lacks standing to assert it. Geisler Enforcement Order ¶ F. Accordingly, the Court should reconsider the Transfer Order and dismiss Count III under Rule 12(b)(1).

## I. THE TRANSFER ORDER FAILED TO APPREHEND PLAINTIFF'S LACK OF STANDING TO ASSERT THE UNDERLYING *LIABILITY* CLAIM AGAINST H.I.G. MANAGEMENT

At the threshold, the Transfer Order failed to consider Plaintiff's lack of standing to assert her ***liability*** claim against H.I.G. Management. The Transfer Order denied dismissal because "Plaintiff asserts liability insurance claims," in which "the [Wellpath Estate] has no cognizable interest." Transfer Order at 6. But this answers the wrong question, *i.e.*, whether the Wellpath Estate would own a claim to ***insurance proceeds*** indemnifying its own conclusive liability to a third-party. *Id.* Count III seeks to establish H.I.G. Management's (at least) nominal liability to Plaintiff as prerequisite to any liability-insurance proceeds from H.I.G. Management's insurers. Compl. ¶ 35. The correct question is whether Plaintiff owns that underlying ***liability*** claim. She does not—the Wellpath Estate owned and released it—and the failure to consider that question

was clear error. Accordingly, the Transfer Order should be reconsidered, and the claims against H.I.G. Management should be dismissed under Rule 12(b)(1).

Liability insurance indemnifies an insured's liability; it does not establish liability in the first instance. *See, e.g.*, *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 309 (5th Cir. 2021) ("[T]he general rule is that an injured party cannot sue the [defendant's] insurer directly until the [defendant's] liability has been finally determined."); *Cubberley v. Commerce Ins. Co.*, 495 Mass. 289, 293, 249 N.E.3d 1129 (2025) ("[O]btaining a valid final judgment against the insured judgment debtor is a prerequisite to initiating an action against the [liability] insurer."). The "insurance proceeds" exception allows a plaintiff to establish an insured's nominal liability "as a prerequisite to recovering from its insurer." *Mata*, 337 B.R. at 143. To demonstrate H.I.G. Management's nominal liability, however, Plaintiff necessarily must assert a valid liability claim against it. *Id.*; *see Cubberley* ("valid final judgment" of liability "is a prerequisite" to insurance proceeds).

In all the "insurance proceeds" cases cited in the Transfer Order, the plaintiffs indisputably had standing to assert their underlying liability claim against the debtors—only the ability to ***collect*** on that liability was at issue. *Edgeworth*, 993 F.2d at 53 (considering insurance proceeds for wrongful death claim); *Tech. Lending Partners*, 2010 WL 11579814, at *3–4 (separately determining that plaintiffs owned the underlying liability claims they asserted and the right to insurance proceeds predicated on those claims); *Mata*, 337 B.R. at 143 (permitting claim nominally against debtor but denying reconsideration of summary judgment entered in favor of purported alter-ego); *BPX Prod. Co.*, 2025 WL 2952911, at *2 (permitting claim that plaintiff and debtor had settled). Indeed, *Technology Lending Partners* confirms the Transfer Order must be reconsidered. At the very least, the Transfer Order had to separately analyze ownership of ***both*** the

underlying liability claim and the claim to insurance proceeds, as the court did in *Technology Lending Partners*. 2010 WL 11579814, at *3–5. Such a separate inquiry confirms Plaintiff's claim must be dismissed because she does not own the underlying liability claim. *See generally* Geisler Enforcement Order.

Even Plaintiff seemingly recognizes a liability claim against H.I.G. Management is a prerequisite to any insurance-proceeds claim against its insurers. Count III expressly alleges H.I.G. Management "is liable to Plaintiff" and seeks "[a] declaration of liability against" H.I.G. Management. Compl. ¶ 35. Moreover, the request that any damages "be paid by [H.I.G. Management's] liability insurer or insurers" presupposes H.I.G. Management's liability in the first place. *Id.* at 8. In short, even under Plaintiff's conception of the case, Count III asserts a "nominal liability" claim against H.I.G. Management as a necessary prerequisite to pursuit of insurance proceeds against its insurers. Because Plaintiff lacks standing to assert that liability claim, Count III must be dismissed and Plaintiff necessarily also lacks standing to pursue an insurance-proceeds claim predicated on that liability. *See Cubberley*, 495 Mass. at 294 (plaintiffs who "directly sued" insurer "[r]ather than obtaining final judgments against the insureds …. lack[ed] standing").

The dispositive question was never whether the Wellpath Estate owned an insurance-proceeds claim; it was whether Plaintiff owned the liability claim asserted in Count III, upon which any insurance-proceeds claim necessarily rests. As discussed above, Plaintiff does ***not*** own the underlying liability claim, which is the only claim involving H.I.G. Management in this action and is a necessary prerequisite to any insurance-proceeds claim. By failing to assess Plaintiff's standing to assert the underlying ***liability*** claim against H.I.G. Management—the only relevant claim in this action—the Transfer Order committed a clear error "not of reasoning but of apprehension," which should be reconsidered. *Nexium*, 42 F. Supp. 3d at 284.

## II. THE TRANSFER ORDER FAILED TO APPREHEND THE SCOPE AND EFFECT OF THE GEISLER ENFORCEMENT ORDER

Separately, the conclusion that Plaintiff's claim against H.I.G. Management may proceed despite "'[t]he Bankruptcy Court's injunction,'" Transfer Order at 6 (quoting Motion to Dismiss at 3 (alteration in Transfer Order)), rests on a manifest misapprehension of the relevant injunction. The Transfer Order concludes that the automatic injunction in Section 524 permits an action to fix "nominal liability" because it is "expressly designed to protect only the debtor.'" Transfer Order at 6 (quoting *Mata*, 337 B.R. at 143). But H.I.G. Management never invoked a Section 524 injunction. It invoked the Geisler Enforcement Order—a specific filing injunction for H.I.G. Management's benefit that specifically prohibits Plaintiff from pursuing the claim in this very action. By relying on cases interpreting a Section 524 injunction, and by failing to consider the specific scope and provisions of the Geisler Enforcement Order filed in this action, the Transfer Order committed a separate clear error of apprehension that should be reconsidered.

The cases cited in the Transfer Order are expressly grounded on the scope of a Section 524 injunction, which is wholly irrelevant here. That statute "protects a debtor from any subsequent action" but "specifies that the debt still exists and can be collected from any other entity that might be liable." *Edgeworth*, 993 F.2d at 53. Because ***Section 524*** "does not affect the liability of liability insurers," *id.* at 54, the Fifth Circuit has interpreted the statute to allow "an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer." *Mata*, 337 B.R. at 143.

The Geisler Enforcement Order, on the other hand, expressly ***prohibits*** such an action: it conclusively holds (1) derivative claims against the H.I.G. Entities became property of the estate and were released, (2) the claim asserted against H.I.G. Management in this action constitutes such a released claim, and (3) as such, Plaintiff cannot continue to pursue her claim against H.I.G.

Management in this action. Geisler Enforcement Order ¶¶ B–G. The Geisler Enforcement Order specifically enjoins Plaintiff "from further pursuing the claims asserted against H.I.G. in *the Geisler Action*." *Id.* ¶ 3.

Once final, bankruptcy orders are preclusive and may not be collaterally attacked—even on the ground that the bankruptcy court exceeded its authority. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151–53 (2009). Plaintiff had notice of H.I.G.'s enforcement motion and elected not to respond. Geisler Enforcement Order at 2 & n.5. Any argument against the Geisler Enforcement Order had to be asserted to the Bankruptcy Court or on appeal from that order. Geisler did neither. Having squandered both opportunities, Plaintiff may not obtain a second bite at the apple through collateral attack in a different forum. *See Bailey*, 557 U.S. at 152–53. Plaintiff must be held to the plain terms of the Geisler Enforcement Order: she is "ENJOINED from further pursuing the claims asserted against H.I.G. [Management] in *the Geisler Action*." Geisler Enforcement Order ¶ 3.

In allowing Plaintiff to pursue her liability claim against H.I.G. Management in this action, the Transfer Order effectively rendered that injunction a nullity. Transfer Order at 6–7. That holding cannot stand alongside *Bailey*—nor can it stand alongside the Geisler Enforcement Order itself, which explicitly enjoined pursuit of the exact claims asserted in ***this*** action. Geisler Enforcement Order ¶ 3. And the Bankruptcy Court's retention of exclusive jurisdiction to interpret the injunction confirms that it was not the Transferor Court's to narrow. *Id.* ¶ 5.

H.I.G. Management does not believe the Transferor Court consciously intended to re-write the Geisler Enforcement Order, which is entitled to full faith and credit; usurp the Bankruptcy Court's exclusive jurisdiction to enforce and interpret its express injunction; and authorize Plaintiff's continued pursuit of the exact claims she was specifically enjoined from pursuing. Geisler Enforcement Order ¶¶ 3–5. Instead, the Transfer Order's discussion of Section 524 makes

clear that the Transferor Court believed it was interpreting that statute—not a separate injunction specifically targeted at this action and these parties. Transfer Order at 6–7. That belief was a clear error of apprehension, however, and leaving the Transfer Order in place would be a clear error of law and manifestly unjust to H.I.G. Management. Accordingly, the Court should reconsider the Transfer Order and dismiss Plaintiff's claims against H.I.G. Management.

## CONCLUSION

For the reasons stated above, H.I.G. Management respectfully requests that the Court (1) grant this motion and reconsider the Transfer Order (ECF No. 50) insofar as it denied H.I.G. Management's motion to dismiss under Rule 12(b)(1); (2) dismiss with prejudice all claims asserted against H.I.G. for lack of standing under Rule 12(b)(1); (3) direct the Clerk to terminate H.I.G. as a party; and (4) grant such further relief as the Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), H.I.G. respectfully requests oral argument on this motion, as it believes argument may assist the Court in resolving the interplay between the Transfer Order and the Bankruptcy Court's Release Orders and the Geisler Enforcement Order.

## LOCAL RULE 7.1(a)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), undersigned counsel certifies that counsel for H.I.G. conferred with counsel for Plaintiff, Richard K. Latimer, Esq., by telephone on November 5, 2026,

in a good-faith attempt to resolve or narrow the issues presented by this motion. Plaintiff opposes the relief requested.

Dated: November 6, 2026

Respectfully submitted,

*Attorneys for Defendant H.I.G. Capital Management, LLC*

*/s/ Keenan Molaskey*

**Samual A. Miller, Esq.**
BBO Number 648568
AKERMAN LLP
420 South Orange Avenue – Suite 1200
Orlando, FL 32801
Telephone: 407-423-4000
Email: samual.miller@akerman.com

**Jason S. Oletsky, Esq.**
Florida Bar No. 009301 (*Admitted Pro Hac Vice)*
AKERMAN LLP
201 E. Las Olas Boulevard – 18th Floor
Ft. Lauderdale, Florida 33301
Telephone: (954) 463-2700
Email: jason.oletsky@akerman.com
jill.parnes@akerman.com

**Evelina Gentry, Esq,**
CA. Bar No. 296796 (*Admitted Pro Hac Vice*)
AKERMAN LLP
633 West 5th Street – Suite 6400
Los Angeles, CA 90071
Telephone: (213) 533-5975
Email: evelina.gentry@akerman.com
kristina.wilcox@akerman.com

**Keenan Molaskey, Esq.**
Florida. Bar No. 1031827 (*Admitted Pro Hac Vice*)
AKERMAN LLP
1900 Sixteenth Street – Suite 950
Denver, CO 80202
Telephone: (813) 223-7333
Email: keenan.molaskey@akerman.com
caren.deruiter@akerman.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on November 6, 2026.

*Attorneys for Defendant H.I.G. Capital Management, LLC*

*/s/ Keenan Molaskey*
Keenan Molaskey